413 So.2d 1187 (1982)
FLORIDA POWER CORPORATION, Appellant,
v.
Joseph P. CRESSE, et al., Appellees.
No. 60604.
Supreme Court of Florida.
April 29, 1982.
*1188 Sylvia H. Walbolt and Donald E. Hemke of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, and S.A. Brandimore and R.W. Neiser, St. Petersburg, for appellant.
William S. Bilenky, Gen. Counsel, Pamela Johnson, Associate Gen. Counsel and Michael B. Twomey, Staff Counsel, Florida Public Service Commission, Tallahassee, for appellees.
Jack Shreve, Public Counsel and J. Roger Howe, Associate Public Counsel, Tallahassee, for the citizens of the State of Florida.
ADKINS, Justice.
We have for review an order of appellee, the Florida Public Service Commission (hereinafter the PSC), relating to rates of appellant Florida Power Corporation (hereinafter FPC), a utility providing electric service. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. (1980).
In February, 1980, FPC's Crystal River No. 3 nuclear power plant (hereinafter CR3) was forced to shut down and as a result remained out of service for 167 days. Because of the outage, FPC had to switch to more expensive fossil fuel generation and incurred much higher fuel expenses than had been projected for that time period.
At a subsequent "true-up" hearing, where cost projections for a period are compared with the actual results thereof and adjustments are made to account for underrecovery or overrecovery by the utility, FPC petitioned for authority to recover $46.3 million which it contended was the underrecovery for the period in question. The PSC initially withheld approval of the recovery of $22.8 million of the amount requested pending hearings on the matter, but at the completion thereof allowed recovery of all but $3.5 million.
Recovery of the $3.5 million was denied because of the PSC's finding that the shutdown of CR3 had been extended one week by FPC's failure to have on hand a replacement *1189 decay heat pump. The PSC found that a replacement heat pump should have been kept in inventory by FPC and reasoned that the excess fuel costs attributable to the extra week should be borne by the utility rather than the public. This appeal followed.
In ruling that FPC must bear responsibility for any portion of the outage attributable to its failure to have on hand a replacement heat pump, the PSC noted that the utility had experienced problems with the troublesome pump on two prior occasions and had decided in early 1979 to order a spare pump for inventory. Because of an administrative error, however, FPC failed to order the spare pump and so had one neither on hand nor on order when the outage occurred. The PSC concluded that FPC's prior troubles with the heat pump, its recognition of the necessity of having a spare pump on hand, as evidenced by the decision to order such, and the failure to procure a spare justified the withholding of the $3.5 million.
FPC argues that the facts do not support a finding of mismanagement and that it is entitled to the full amount requested. It notes the impracticality of maintaining a complete inventory of spare parts for a nuclear power plant and asserts that in light of both its own experience with the equipment and of national data bank information, the lack of a spare pump was not an unreasonable state of affairs. FPC also notes that the part not on hand, the pump casing, is a non-moving part with a very low probability of failure and that the utility did have spares for the moving parts of the pump. It is improper, FPC contends, to use hindsight and hold it responsible for the lack of a spare when, in the utility's opinion, its actions were reasonable and correct at the time. We, however, do not agree that there is no evidence of mismanagement.
First, there is the prior trouble which FPC had experienced with the pump in question. On one occasion the pump casing was found to be "out of kilter" and was machined in an attempt to correct the problem. On another, the pump shaft failed, the utility did not have the necessary parts on hand to repair the unit, and as a result the outage caused thereby was extended by 15 days. The above incidents ought to have put FPC on notice that the heat pump was a likely source of trouble and that problems there could lead to extended outages if the necessary repair and replacement equipment was not kept on hand. The PSC's finding of management imprudence cannot be characterized as "hindsight" in view of EPC's experience with the heat pump prior to the incident with which we are concerned.
Also supporting the PSC's finding is the evidence of the utility's decision to order a replacement pump for inventory. FPC's witness at the hearings before the PSC stated that the decision to order an entire spare heat pump was made after the shaft failure incident. That decision indicates recognition by management that a spare heat pump was a necessity for proper operation of the plant. FPC argues that the decision proves nothing of the sort, but instead simply shows the exercise of an abundance of care by management. Regardless of FPC's interpretation, however, the PSC concluded that the utility's management was guilty of imprudence in not having a replacement available during the outage. There was substantial and competent evidence for that conclusion and so we will not interfere with that aspect of the PSC's decision. Surf Coast Tours, Inc. v. Florida Public Service Commission, 385 So.2d 1353 (Fla. 1980); Florida Telephone Corp. v. Mayo, 350 So.2d 775 (Fla. 1977).
As its second point on appeal, FPC asserts that the failure to have a replacement pump on hand did not delay CR3's return to service. If the utility is correct on this point, then it makes no difference whether it was guilty of management imprudence in not having a spare.
FPC contends that the PSC improperly considered isolated segments of expert testimony in concluding that the lack of a spare extended the outage, and that consideration of the evidence as a whole demonstrates to the contrary.
*1190 The PSC, argues FPC, relies entirely upon an exchange in which a utility witness testified that the repair and testing of the heat pump appeared on the "critical path schedule" for 17 days and that the lack of a spare during that period resulted in increased fuel costs. According to FPC, that statement, taken out of context, does not accurately reflect the gist of that witness' testimony. The utility contends that the testimony in question, in its entirety, indicates that the presence of an activity on the critical path schedule for a certain number of days does not necessarily mean that the absence thereof would have shortened the outage by that length of time, that certain modifications required by the Nuclear Regulatory Commission as a result of the Three Mile Island incident would have kept the plant closed until late in the outage period regardless of what other work was being done, and that time spent on other independent but necessary items not appearing on the critical path schedule would have delayed start-up of the plant even had a replacement pump been on hand.
FPC correctly notes that several passages in the transcript can be interpreted as indicating that lack of a spare heat pump did not extend the outage. There are, however, other parts of the transcript, cited by the PSC, which indicate that the necessity of obtaining a spare heat pump delayed start-up for seven days at an approximate cost of $500,000 per day. Without doubt, there exists conflict in the record on this issue.
Because the conflict is so clear, and because there is ample testimony in support of each of the positions espoused, we must defer to the PSC, in its role as fact finder, on this point. As noted in the PSC's brief, it was responsible for resolving the conflict in the evidence and did so by finding more credible the testimony that heat pump problems extended the outage. Because the order is supported by competent and substantial evidence, Florida Telephone Corporation v. Mayo, it has a sufficient basis and we will not disturb that finding.
As its final point on appeal, FPC argues that the PSC, in refusing to permit recovery of the disputed amount, imposed upon it an improper burden of proof. According to the utility, legitimately incurred operating expenses such as fuel costs are presumed to be reasonable, and evidence that such operating costs were incurred satisfies the utility's initial burden of production. At that point, it reasons, the PSC must establish by substantial, competent evidence that the amounts paid were imprudently or unnecessarily incurred. The PSC's mistake, according to FPC, was that it required FPC to prove that the failure to have a pump was not imprudent and that it did not extend the outage rather than the PSC itself proving to the contrary. We do not agree. The language in PSC Order No. 9273, issued March 7, 1980, which adopted, among other things, the true-up mechanism here under consideration, provides or indicates several times that the burden of justifying fuel cost adjustments is on the utilities.
First, the order notes that at the time the PSC adopted the fuel adjustment clause, it "approved a stipulation of parties that required utilities to justify changes to the charges at public hearings held on a monthly basis." Order No. 9273 at 1 (emphasis added). Recounting the initial staff testimony proposing the modification of the clause, the order notes that one witness "stressed the need for the true-up mechanism ... and pointed out that the companies would be required to explain the reasonableness of their fuel purchases at the hearing during which projected amounts would be compared to actual results." Order No. 9273 at p. 2 (emphasis added). In another section, it notes as follows:
We will continue ... to audit and evaluate the performance of the companies, and to approve for inclusion into the clause only prudently and necessarily incurred fuel expense. Accordingly, we will conduct in the second month following a projection period a public hearing for the purpose of ascertaining the differences between projected and actual costs. At that time, the reasonableness of the *1191 companies' expenditures during the preceding projection period will also be examined.
Order No. 9273 at 7. Finally, we note that the presidents of FPC and the other utilities endorsed adoption of the true-up provision.
The requirement that utilities demonstrate the reasonableness of their fuel costs is not improper or unusual. "Burden of proof in a commission proceeding is always on a utility seeking a rate change, and upon other parties seeking to change established rates." WELCH, CASES AND TEXT ON PUBLIC UTILITY REGULATION, 638 (Revised Edition 1968). FPC asserts that it provided proof of its fuel costs, that the same were incurred in the production of electric power for its customers, and that the reasonableness thereof was never questioned, and so that it was up to the PSC to show otherwise. That is not so. The data provided showed that FPC's fuel costs were significantly higher due to an incident the responsibility for which was in dispute. It was up to the utility, under those conditions, to show that the excess costs incurred were reasonable and were not the fault of management. Simple production of cost records and documentation cannot satisfy the requirements imposed on a utility in a true-up proceeding. The PSC did not improperly place the burden on FPC and there was a sufficient basis for its finding regarding the excess costs.
Having reviewed each of appellant's points on appeal and having found that none warrant reversal of the portions of the order objected to, Order No. 9950 is hereby affirmed.
It is so ordered.
SUNDBERG, C.J., and OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
BOYD, J., dissents.